# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE NATIONAL RETIREMENT FUND and Richard N. RUST, in his capacity as Fund Manager, each of behalf of the Legacy Plan of the National Retirement Fund, | : <br> : <br> : <br> : |
| Plaintiffs, | : <br> : |
| v. | :    15 CV 02048 (LAK) (JLC) |
| CAESARS ENTERTAINMENT CORPORATION; CAESARS ENTERTAINMENT RESORT PROPERTIES, LLC; and JOHN DOES 1-10 (all other trades or businesses under common control with Caesars Entertainment Corporation and Caesars Entertainment Resort Properties, LLC that have not filed for bankruptcy), | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Defendants. | : |

## PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

SUMMARY OF RELEVANT ALLEGATIONS ........................................................................3

STANDARD...................................................................................................................................5

ARGUMENT..................................................................................................................................7

    I. THE COURT HAS NO JURISDICTION TO DETERMINE WHETHER THE FIRST INSTALLMENT PAYMENT IS CURRENTLY DUE...............................................................7

    II. THE DEFENDANTS MUST MAKE THEIR WITHDRAWAL LIABILITY INSTALLMENT PAYMENTS UNLESS AND UNTIL AN ARBITRATOR RULES THAT THE PAYMENTS ARE NOT DUE. ................................................................................................8

    III. THE DEFENDANTS' RIPENESS ARGUMENTS ARE MISPLACED. ...........................9

        A. The Fund's Claims Are Ripe For Adjudication. ...............................................9

        B. The Standstill Agreement Is A Red Herring That Has No Bearing On This Case. ......10

    IV. THE FUND HAS STATED A VALID CLAIM FOR RELIEF. .........................................13

CONCLUSION................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alliance of Auto. Manufacturers, Inc. v. Currey*,
   No. 13-4890-cv, 2015 WL 1529018 (2d Cir. Apr. 7, 2015) ...................................................... 9

*Amalgamated Lithographers of Am. v. Unz & Co. Inc.*,
   670 F. Supp. 2d 214 (S.D.N.Y. 2009) ...................................................................................... 7

*AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*,
   6 F.3d 867 (2d Cir. 1993) .................................................................................................. 6, 10

*Argonaut P'ship, L.P. v. Bankers Tr. Co. Ltd.*,
   No. 96 CIV. 1970 (MBM), 96 CIV. 2222 (MBM),
   1997 WL 45521 (S.D.N.Y. Feb. 4, 1997) ................................................................................ 6

*Bank of N.Y. v. First Millennium, Inc.*,
   607 F.3d 905 (2d Cir. 2010) ................................................................................................... 13

*Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*,
   522 U.S. 192 (1997) ............................................................................................................ 5, 8

*Bowers v. Transportacion Maritima Mexicana, S.A.*,
   901 F.2d 258 (2d Cir. 1990) ..................................................................................................... 7

*Carruthers v. Flaum*,
   388 F. Supp. 2d 360 (S.D.N.Y. 2005) ................................................................... 5, 9, 10, 11

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
   261 F. Supp. 2d 293 (S.D.N.Y. 2003) ..................................................................................... 6

*Eastman Kodak Co. v. STWB Inc.*,
   232 F. Supp. 2d 74 (S.D.N.Y. 2002) ..................................................................................... 12

*Galgay v. Beaverbrook Coal Co.*,
   105 F.3d 137 (3d Cir. 1997) .................................................................................................... 8

*Galli v. Metz*,
   973 F.2d 145 (2d Cir. 1992) ................................................................................................... 11

*ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*,
   846 F.2d 879 (2d Cir. 1988) .................................................................................................... 7

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991) ......................................................................................... 5, 9, 11

*Md. Cas. Co. v. Continental Cas. Co.*,
  332 F.3d 145 (2d Cir. 2003)..................................................................................................13

*Schaeffer v. Kessler*,
  No. 12 Civ. 8576(PKC), 2013 WL 1155587 (S.D.N.Y. Mar. 20, 2013) .................................10

*Schlaifer Nance & Co. v. Estate of Warhol*,
  119 F.3d 91 (2d Cir. 1997)....................................................................................................11

*Seippel v. Jenkens & Gilchrist, P.C.*,
  341 F. Supp. 2d 363 (S.D.N.Y. 2004)....................................................................................10

*Shipping Fin. Servs. Corp. v. Drakos*,
  140 F.3d 129 (2d Cir. 1998)..........................................................................................6, 7, 14

*Teamsters Pension Trust Fund-Bd. of Trs. of the W. Conf. v. Allyn Transp. Co.*,
  832 F.2d 502 (9th Cir. 1987) ...................................................................................................7

*Walsh v. McGee*,
  918 F. Supp. 107 (S.D.N.Y. 1996)...........................................................................................6

**Statutes**

Section 502 of ERISA, 29 U.S.C. § 1132...........................................................................................6

Section 4001 of ERISA, 29 U.S.C. § 1301......................................................................................2, 3

Section 4203 of ERISA, 29 U.S.C. § 1383.........................................................................................4

Section 4219 of ERISA, 29 U.S.C. § 1399..................................................................................5, 7, 8

Section 4221 of ERISA, 29 U.S.C. § 1401..................................................................................6, 7, 8

Section 4301 of ERISA, 29 U.S.C. § 1451.........................................................................................6

Section 414 of the Internal Revenue Code, 26 U.S.C. § 414.............................................................3

**Other Authorities**

Rule 12(b)(1) of the Federal Rules of Civil Procedure...............................................................1, 5, 6

Rule 12(b)(6) of the Federal Rules of Civil Procedure...........................................................1, 5, 6, 7

Plaintiffs, the National Retirement Fund and Richard N. Rust in his capacity as Fund Manager ("Rust," and together with the National Retirement Fund, the "NRF" or the "Fund"), each on behalf of the Legacy Plan of the National Retirement Fund (the "Plan"), by their undersigned attorneys, respectfully submit this brief in opposition to the Motion to Dismiss the Complaint (the "Motion") filed by Defendants Caesars Entertainment Corporation ("CEC"), Caesars Entertainment Resort Properties, LLC ("CERP") and John Does 1-10 (together, the "Defendants") pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") 12(b)(1) and 12(b)(6).

## PRELIMINARY STATEMENT

The Fund has brought a straightforward action to collect a statutorily-mandated withdrawal liability installment payment that is past due, along with interest, liquidated damages and attorneys' fees and costs. The Defendants were required to make the payment pursuant to the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), which amended the Employee Retirement Income Security Act of 1974 ("ERISA").

In their Motion, the Defendants argue that the payment is not yet due and may never be due. They conclude that, as a result, the Fund's claims are not "ripe" for adjudication. By statute, however, that argument must be made to an arbitrator — this Court has no jurisdiction to determine the withdrawal liability payment due date. Pending an arbitrator's ruling on that issue, the payment <u>must</u> be made. Thus, the issue here is not one of "ripeness." It is a pure collection matter. To be sure, the "ripeness" doctrine was designed to spare courts from entangling themselves in cases involving no real dispute. Here, there is an actual dispute: The Fund argues that the Defendants failed to make a withdrawal liability installment payment and the Defendants deny that.

Even assuming, *arguendo*, that the Defendants could make a "ripeness" argument to this Court, it would fail. Their argument is based purely on the substance of a standstill agreement that was entered into in a separate bankruptcy proceeding. The agreement, however, was not mentioned or incorporated into the Fund's Complaint and the Court cannot take judicial notice of the contents of the agreement for the truth of the matters asserted therein. Moreover, the express terms of the standstill agreement are unambiguous: no portion of the agreement has any bearing on the rights of the parties or the powers of the Court in this action. Thus, the standstill agreement does not negate the Fund's argument — made in this case — that the Defendants' withdrawal liability installment is past due. Put simply, this action arises out of an existing case or controversy regarding the Defendants' past-due withdrawal liability. The issue is ripe and the Court has jurisdiction to rule in the Fund's favor and order the Defendant to remit its overdue payment to the Fund.

The Defendants insert a two-sentence argument at the end of their Motion asserting that the Fund has failed to state a claim for which relief can be granted. They are wrong. In its complaint, the Fund alleged that (1) the Defendants' controlled group had a prior obligation to contribute to the Plan, (2) upon certain members of the Defendants' controlled group's withdrawal from the Plan, the Fund sent the Defendants a notice and demand letter setting forth a payment schedule commencing on March 15, 2015 and (3) the Defendants failed to make their required payment on that date.[1] Those allegations are sufficient to state a claim for relief.

The Defendants' motion to dismiss should be summarily denied.

---

[1] Pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), a withdrawing employer is not the only entity responsible for withdrawal liability. Congress also provided that all "trades or businesses" under "common control" with the withdrawing employer are treated as a single entity for purposes of assessing and collecting withdrawal liability. The group of trades or businesses that are responsible for an employer's withdrawal liability is referred to as a "controlled group." *See* Section 4001(b) of ERISA, 29 U.S.C. § 1301(b).

2

## **SUMMARY OF RELEVANT ALLEGATIONS**

The Fund is a multiemployer pension plan that provides retirement and other benefits to its participants and beneficiaries. (Compl. ¶¶ 7, 8.) The Fund has over 400,000 individual participants, including approximately 86,000 active participants, 157,000 retirees and 166,000 terminated vested participants. (*Id.* ¶ 6.) The Fund's Board of Trustees is divided equally between employer-appointed and union-appointed Trustees. (*Id.* ¶ 4.) The Plan is in "critical status" under the Pension Protection Act of 2006. (*See id.* ¶ 10.) Rust is the Fund Manager and a fiduciary of the Plan authorized to bring this action. (*Id.* ¶¶ 8-9.)

Defendant CEC is a Delaware corporation, actively engaged in the gaming business. (Compl. ¶ 12.) Defendant CERP is a Delaware limited liability company, also actively engaged in the gaming business. (*Id.* ¶ 13.) CEC is the 100% owner of CERP. (*Id.* ¶ 14.) CEC is the 89% owner of Caesars Entertainment Operating Company, Inc. ("CEOC"). (*Id.* ¶ 27.) CEOC, in turn, is the 100% owner of Bally's Park Place, Inc. d/b/a Bally's Hotel and Casino ("Bally's"), Boardwalk Regency Corporation d/b/a Caesars Atlantic City ("Boardwalk"), Parball Corporation ("Parball") and Harrah's Operating Company, Inc. d/b/a Harrah's Atlantic City Casino & Hotel ("Harrah's Operating"). (*Id.* ¶ 28.) Additionally, CEOC is the 99.5% indirect owner of Chester Downs & Marina, LLC d/b/a Harrah's Philadelphia ("Chester"). (*Id.* ¶ 29.) At all relevant times, the Defendants were trades and businesses under common control with Bally's, Boardwalk, Parball, Harrah's Operating and Chester (collectively, the "Employers") pursuant to Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), Section 414(c) of the Internal Revenue Code, 26 U.S.C. § 414(c) and the regulations promulgated thereunder. (*Id.* ¶¶ 30-32.)

The Employers had an obligation to contribute to the Plan through the Fund pursuant to collective bargaining agreements with UNITE HERE. (Compl. ¶ 15.) On January

3

12, 2015, the Fund sent the Employers a notice informing them that the Trustees of the Fund determined it was in the best interests of the Plan, and the Plan's participants and beneficiaries, for the Plan to cease accepting contributions from the Employers.  (*Id.* ¶¶ 16-17.)  At that time, each of the Employers ceased to have an obligation to contribute to the Plan, resulting in their "complete withdrawal" from the Plan pursuant to Section 4203(a) of ERISA, 29 U.S.C. § 1383(a).  (*Id.* ¶ 19.)

On February 13, 2015, the Fund sent CEC and CERP a notice and demand letter, addressed to CEC, CERP and certain other members of their controlled group, notifying them that the Employers had incurred a complete withdrawal from the Plan and that the Defendants owed the Fund withdrawal liability in the amount of $363,622,615.00, to be paid in 80 quarterly installments of $5,981,493.64 each (the "Payment Schedule").  (Compl. ¶¶ 21-25.)  The first installment payment was due on March 15, 2015 (the "First Installment Payment").  (*Id*. ¶ 25.) On March 18, 2015, upon the Defendants' failure to make the First Installment Payment, the Fund commenced this action seeking from the Defendants the full amount of the First Installment Payment, plus interest, liquidated damages, and attorneys' fees and costs.  (*Id.* ¶¶ 25, 33-47.)

On March 20, 2015, CEC, CEOC, the Employers, the Fund and the Trustees of the Fund entered into a standstill agreement (the "Standstill Agreement"), in connection with a bankruptcy proceeding involving CEOC, Bally's, Boardwalk, Parball and other related entities, pending in the United States Bankruptcy Court for the Northern District of Illinois, *In re Caesars Entertainment Operating Co.*, Case No. 15-01145 (ABG), 944-2 (Bankr. N.D. Ill. Mar. 23,

2015),[2] that, *inter alia*, set forth deadlines for briefing in certain motion practice and set forth payment schedules with regard to, and limited to, deadlines in the bankruptcy proceeding. (Docket No. 13, App. A.)[3]  Paragraph 3.a. of the Standstill Agreement provides that "the NRF contends [the First Installment Payment] is due on March 15, 2015." (*Id.* ¶ 3.a.)  The Standstill Agreement also provides that: "Nothing in this Agreement shall be construed to limit the rights of the Parties in, or the powers of the courts in, the action[] captioned … The National Retirement Fund, et al. v. Caesars Entertainment Corporation, et al., Civil Action No. 15-CV-02048, in the United States District Court for the Southern District of New York." (*Id.* ¶ 4.h.)

## STANDARD

There is one federal statute and two federal rules that the Court must consider in connection with this motion — (1) ERISA's "pay now, dispute later" provisions, (2) F.R.C.P. 12(b)(1) and (3) F.R.C.P. 12(b)(6).

First, Section 4219(c)(2) of ERISA provides that "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2) (emphasis added); *see also Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal., Inc.*, 522 U.S. 192, 197 (1997) ("Even if the employer challenges the trustees' withdrawal liability determination . . . it still must pay according to the trustees' schedule in the interim under the statute's 'pay now, dispute later collection procedure.'") (Emphasis added.).  Thus, an employer is required to make these payments unless

---

[2] The Court may take judicial notice of this filing "to establish the fact of such litigation and related filings." *Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

[3] For the reasons set forth below, the Court should not consider the Standstill Agreement for the truth of the matters set forth therein.  To the extent, however, that the Court decides to consider the terms of the Standstill Agreement, the Fund has included a summary of the relevant portions of the Standstill Agreement in this memorandum of law.

and until an arbitrator renders a judgment in the employer's favor that the payments are not due. Section 4221(d) of ERISA, 29 U.S.C. § 1401(d) ("Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration . . . .") (emphasis added). When an employer fails to make a timely withdrawal liability payment, a fiduciary of the fund may bring a civil action on behalf of the fund to collect the missed payment, plus interest, liquidated damages and attorneys' fees and costs. Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2); *see* Section 4301(b) of ERISA, 29 U.S.C. § 1451(b).

Second, Courts may consider the issue of "ripeness" "on a motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules." *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 294 (S.D.N.Y. 2003). When considering such a motion, the court "must accept as true all material factual allegations in the complaint." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). "A case is ripe when its viability does not depend upon 'uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Argonaut P'ship, L.P. v. Bankers Tr. Co. Ltd.*, No. 96 CIV. 1970 (MBM), 96 CIV. 2222 (MBM), 1997 WL 45521, at *4 (S.D.N.Y. Feb. 4, 1997) (quoting *AMSAT Cable Ltd. v. Cablevision of Conn. Ltd. P'ship*, 6 F.3d 867, 872 (2d Cir. 1993)). The "[r]ipeness doctrine reflects the principle that 'courts should decide only a real, substantial controversy, not a mere hypothetical question.'" *AMSAT Cable*, 6 F.3d at 872.

Third, Rule 12(b)(6) of the Federal Rules of Civil Procedure "test[s] the formal sufficiency of the statement of the claim for relief." *Walsh v. McGee*, 918 F. Supp. 107, 112 (S.D.N.Y. 1996). A "motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Id.* Courts considering a motion to dismiss for failure to state claim under Rule

12(b)(6) "must accept as true all material factual allegations in the complaint." *Drakos*, 140 F.3d at 131.

## ARGUMENT

### I. THE COURT HAS NO JURISDICTION TO DETERMINE WHETHER THE FIRST INSTALLMENT PAYMENT IS CURRENTLY DUE.

Section 4219(b)(1) of ERISA provides that "the plan sponsor shall . . . notify the employer of . . . the schedule for liability payments, and . . . demand payment in accordance with the schedule." 29 U.S.C. § 1399(b)(1). This schedule is determined in accordance with Section 4219(c) of ERISA. 29 U.S.C. § 1399(c). Any disputes "between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 4201 through 4219 [of ERISA, 29 U.S.C. §§ 1381-1399] shall be resolved through arbitration." Section 4221(a)(1) of ERISA, 29 U.S.C. § 1401(a)(1) (emphasis added); *see also ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 885 (2d Cir. 1988) ("[t]he statute states unambiguously that '*[a]ny* dispute between an employer and the plan sponsor . . . concerning a determination made under sections 1381 through 1399 [of the U.S. Code] . . . shall be resolved through arbitration'" (ellipses and second alteration in original)) (quoting *Teamsters Pension Trust Fund-Bd. of Trs. of the W. Conf. v. Allyn Transp. Co.*, 832 F.2d 502, 505-06 (9th Cir. 1987)).

Thus, the Defendants' dispute over the Fund's determination of their withdrawal liability payment schedule must be arbitrated. *See Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 229 (S.D.N.Y. 2009) ("The MPPAA and the cases are clear—if an employer wishes to dispute anything related to its assessed liability or payment schedule, it must raise the matter in a timely arbitration.") (citing 29 U.S.C. § 1401(a)(1); *Bowers v. Transportacion Maritima Mexicana, S.A.*, 901 F.2d 258, 262 (2d Cir. 1990)).

7

## II.     THE DEFENDANTS MUST MAKE THEIR WITHDRAWAL LIABILITY INSTALLMENT PAYMENTS UNLESS AND UNTIL AN ARBITRATOR RULES THAT THE PAYMENTS ARE NOT DUE.

During the pendency of an arbitration challenging withdrawal liability payments or a withdrawal liability payment schedule, employers must make all withdrawal liability installment payments set forth in a multiemployer pension plan's payment schedule. *See* Section 4219(c)(2) of ERISA, 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.") (Emphasis added); Section 4221(d) of ERISA, 29 U.S.C. § 1401(d) ("Payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration . . . .") (emphasis added). This is referred to as the "pay now, dispute later" scheme for withdrawal liability payments. *See* Sections 4219(c)(2) and 4221(d) of ERISA, 29 U.S.C. §§ 1399(c)(2), 1401(d); *Ferbar Corp.*, 522 U.S. at 197 ("Even if the employer challenges the trustees' withdrawal liability determination . . . it still must pay according to the trustees' schedule in the interim under the statute's 'pay now, dispute later collection procedure.'") (Emphasis added.).

This scheme furthers MPPAA's purpose by ensuring that the benefits for a fund's participants and beneficiaries are adequately funded. *See Galgay v. Beaverbrook Coal Co.*, 105 F.3d 137, 139 (3d Cir. 1997) ("Congress enacted MPPAA out of concern that multiemployer pension plans would collapse as employers withdrew if the remaining contributors became too few in number to pay the unfunded vested benefits."); *id*. ("Congress foresaw that the purpose of MPPAA would be undermined if employers could postpone paying their debts to pension funds by engaging in protracted litigation over withdrawal liability. Therefore, the statute directs

8

employers to begin payments upon notification of withdrawal liability, whether or not they choose to dispute the determination." (citations omitted)).

Indeed, numerous members of the Defendants' controlled group have filed for bankruptcy — including CEOC and three of the Employers (Bally's, Boardwalk and Parball).[4] That bankruptcy calls into question the ability of Defendants to pay the First Installment Payment (and related damages) at a later date. If the Court waits to decide this case, the amount the Fund may be able to recover in this or a future action could be substantially reduced or eliminated. As alleged in the Complaint, the Fund operates to provide benefits to its participants and beneficiaries. (Compl. ¶¶ 6, 8.) Thus, any further delay in the Defendants' payment of the First Installment Payment (and related amounts sought by the Fund) could cause harm not only to the Fund but also to its hundreds of thousands of participants and beneficiaries (including current and former employees of the Defendants' controlled group).

## III.  THE DEFENDANTS' RIPENESS ARGUMENTS ARE MISPLACED.

Well aware of ERISA's arbitration mandate, the Defendants attempt to cloak their dispute over the Fund's withdrawal liability payment schedule into one of "ripeness." As set forth above, however, ripeness is not an issue in this case and the Court need not consider it. If the Court were to evaluate ripeness, however, it should rule in the Fund's favor.

### A.  The Fund's Claims Are Ripe For Adjudication.

A plaintiff's claims are ripe when the plaintiff alleges a "real, substantial controversy" and that it has suffered harm by a defendant's actions or conduct. *See Alliance of Auto. Manufacturers, Inc. v. Currey*, No. 13-4890-cv, 2015 WL 1529018, at *1 (2d Cir. Apr. 7, 2015) ("The Alliance has alleged present harm . . . . Accordingly, the district court properly

---

[4]  The Court may take judicial notice of that fact. *See Carruthers v. Flaum*, 388 F. Supp. 2d 360, 370 (S.D.N.Y. 2005) (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)).

9

concluded that the Alliance's claims present 'a real, substantial controversy, not a mere hypothetical question.'"); *Schaeffer v. Kessler*, No. 12 Civ. 8576(PKC), 2013 WL 1155587, at *11 (S.D.N.Y. Mar. 20, 2013) ("The complaint alleges that Mr. Schaeffer has suffered a concrete harm . . . that is sufficient for ripeness."); *Seippel v. Jenkens & Gilchrist, P.C.*, 341 F. Supp. 2d 363, 371 (S.D.N.Y. 2004) ("The fact that the Seippels may not ultimately owe the tax authorities additional taxes does not mean that their action is not ripe.  The Seippels allege that they have been damaged, and continue to be damaged, as a result of defendants' conduct. . . . These injuries are immediate and definite, and therefore satisfy the case or controversy requirement contained in Article III of the Constitution.").

The Fund has alleged that the Defendants owe it $5,981,493.64, a fact that the Defendants deny.  (*See* Compl. ¶¶ 24-25.)  The Fund also has alleged that it has suffered harm caused by the Defendants:  an unpaid receivable of $5,981,493.64 that was due on March 15, 2015.  (*See id*.)  The Defendants dispute those allegations.  (Docket No 13, pp. 3-4.)  Thus, this case involves a "real, substantial controversy" over a multi-million payment owed, but not yet paid, to the Fund.  *See AMSAT Cable*, 6 F.3d at 872.  These issues are ripe for adjudication.

      B.      <u>The Standstill Agreement Is A Red Herring That Has No Bearing On This Case.</u>

The Defendants do not argue that, the facts as alleged in the Fund's complaint — which must be accepted as true for purposes of this motion — are not ripe for consideration.  Rather, they argue that the Standstill Agreement, entered in a separate proceeding, should serve as proof to the Court that the First Installment Payment was not due on March 15, 2015.  Docket No. 13, pp. 3-4.)  The Defendants' argument must be rejected.

<u>First</u>, the Court cannot properly consider the Standstill Agreement to evaluate the Defendants' argument.  The Court may take judicial notice of documents filed in other actions only "to establish the fact of such litigation and related filings."  *Carruthers v. Flaum*, 388 F.

10

Supp. 2d 360, 370 (S.D.N.Y. 2005) (quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). The Defendants, however, have asked the Court to take judicial notice of the Standstill Agreement not to establish its existence, but to establish the truth of a proposition allegedly set forth in the Standstill Agreement, *i.e.*, that "the First Installment Payment is *not* currently due and owing to the NRF." (*See* Docket No. 13, p. 4 (Defendants' emphasis).) Even assuming, *arguendo*, the Standstill Agreement contained that provision (it does not), the Court cannot consider it for its truth. *Carruthers*, 388 F. Supp. 2d at 370. Further, as set forth above, the question of whether the Payment Schedule remains valid after the Standstill Agreement is an issue that must be arbitrated and that the Court is precluded, by federal statute, from considering. (*See supra* Section I.)

Second, the Defendants argue that the allegations in the Complaint regarding the due date of the First Installment Payment should be disregarded because they are contradicted by Paragraph 3.a. of the Standstill Agreement. (Docket No. 13, p. 4.) That is not true. In the Complaint, the Fund asserts that the First Installment Payment was due on March 15, 2015. (Compl. ¶ 25.) Paragraph 3.a. of the Standstill Agreement is a confirmation, not a contradiction, of that allegation. It contains an unambiguous statement that "the NRF contends [the First Installment Payment] is due on March 15, 2015." (Docket No. 13, App. A ¶ 3.a.)

Third, while the Defendants focus on a single provision of the Standstill Agreement to argue that its first installment payment is not currently due, the Court must consider the entirety of the Standstill Agreement, which demonstrates otherwise. *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 100 (2d Cir. 1997) ("well-established principles of contract interpretation . . . require that all provisions of a contract be read together as a harmonious whole, if possible"); *Galli v. Metz*, 973 F.2d 145, 149 (2d Cir. 1992) ("Under New

York law an interpretation of a contract that has 'the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible.' Rather, an interpretation that 'gives a reasonable and effective meaning to all terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect.'" (citations omitted) (ellipses in original)); *Eastman Kodak Co. v. STWB Inc.*, 232 F. Supp. 2d 74, 91 (S.D.N.Y. 2002) ("Under New York law, a court should avoid construing a contractual provision in a manner that renders contractual language meaningless or superfluous.").

The language contained in Paragraph 3.a. of the Standstill Agreement serves a separate purpose in the bankruptcy proceeding than that required by ERISA. Paragraph 3.a. extends the Defendants' time to remit its now overdue payment solely with respect to the separate bankruptcy proceeding in which it was filed and with respect to which it was entered. Paragraph 3.a., for instance, affects the amount of the Fund's claims *in the bankruptcy action* by setting a date for remittance that is different from the date in the Payment Schedule (affecting, *inter alia*, the calculation of interest). The Standstill Agreement, however, makes clear that Paragraph 3.a. does not affect the Fund's claims in this action. Paragraph 4.h. explicitly provides that Paragraph 3.a. has no bearing on the Fund's claim or right to seek relief in this proceeding. Paragraph 4.h. of the Standstill Agreement provides, in relevant part: "Nothing in this Agreement shall be construed to limit the rights of the Parties in, or the powers of the court[] in, the action[] captioned . . . The National Retirement Fund, et al. v. Caesars Entertainment Corporation, et al., Civil Action No. 15-CV-02048, in the United States District Court for the Southern District of New York . . . ." (Docket No. 13, App. A ¶ 4.h.) Notably, the instant action was pending when the parties entered into the Standstill Agreement. (Docket No. 13, p. 4. n.7.) Thus, pursuant to Paragraph 4.h., the Fund is permitted to pursue its claims in this action despite the Standstill

Agreement. That provision would have no meaning if the Standstill Agreement were interpreted as the Defendants propose.[5]

Further, Paragraph 4.h. of the Standstill Agreement forecloses the interpretation that Paragraph 3.a. would have rendered the Fund's claims unripe. The phrase in Paragraph 4.h. of the Standstill Agreement (Docket No. 13, App. A ¶ 4.h.) instructing that "[n]othing in this Agreement shall be construed to limit [certain] rights … or . . . powers" clarifies that the Standstill Agreement as a whole has no effect on the Fund's claims in this action. *See Md. Cas. Co. v. Continental Cas. Co.*, 332 F.3d 145, 162-63 (2d Cir. 2003) (finding it "abundantly clear" that a settlement agreement had no effect on certain claims when a provision of the agreement provided that "[n]othing in this Agreement shall be construed to reduce, alter, modify, or affect" the applicable rights of the parties). Thus, to the extent Paragraph 3.a. and Paragraph 4.h. conflict, Paragraph 4.h. supersedes Paragraph 3.a. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 917 (2d Cir. 2010) ("This Court has recognized many times that under New York law, clauses similar to the phrase '[n]otwithstanding any other provision' trump conflicting contract terms." (alteration in original)).

## IV. THE FUND HAS STATED A VALID CLAIM FOR RELIEF.

The sole basis for the Defendants' assertion that the Fund has not stated a claim is that "Plaintiffs have not alleged, and cannot allege, that the First Installment Payment has not been made when due." (Docket No. 13, p. 6.) That is patently false. The Fund specifically alleged in the Complaint that "[t]he Fund did not receive the first installment payment, which

---

[5] The Defendants argue that "dismissal of this action does not 'limit the rights of the Parties in this action'" because the Fund can refile the Complaint at a later date (Docket No. 13, p. 5.) Even if the Fund is able to file a *new* action, however, the Fund's rights in *this* action — the action explicitly covered by the Standstill Agreement (Docket No. 13, App. A ¶ 4.h.) — would be limited under the Defendants' interpretation of the Standstill Agreement. Also, because Congress specifically provided that multiemployer funds may begin collecting withdrawal liability payments without waiting for the resolution of a dispute over such withdrawal liability, a restriction on the Fund's ability to seek its interim payments immediately is a "limit" on the Fund's rights.

13

was due on March 15, 2015." (Compl. ¶ 25.) For purposes of this Motion, this Court "must accept as true all material factual allegations in the complaint." *Drakos*, 140 F.3d at 131. Further, the Defendants have pointed to nothing that disproves the Fund's allegations. Even if the Court could take judicial notice of the Standstill Agreement for the truth of the matter contained therein (it cannot), it remains that the Standstill Agreement is entirely consistent with the Fund's allegations. Paragraph 3.a. of the Standstill Agreement (the provision upon which the Defendants primarily rely in connection with this motion) states, unambiguously, that the Fund "contends" that "the first installment payment … is due on March 15, 2015." (Docket No. 13, App. A ¶ 3.a.)

## **CONCLUSION**

For the reasons set forth above, the Motion should be DENIED.

Date: July 30, 2015

SCHULTE ROTH & ZABEL LLP

By:   /s/ Ronald E. Richman
     Ronald E. Richman
     Taleah E. Jennings
     Frank P. Sabatini

     919 Third Avenue
     New York, New York  10022
     (212) 756-2000 (telephone)
     (212) 593-5955 (facsimile)
     Ronald.Richman@srz.com
     Taleah.Jennings@srz.com
     Frank.Sabatini@srz.com

     *Attorneys for Plaintiffs*