UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                 :

THE NATIONAL RETIREMENT     :
FUND and RICHARD RUST,       :
                                 :      **REPORT AND**
           Plaintiffs,        :      **RECOMMENDATION**
                                 :
    -v-                      :      15-CV-2048 (LAK) (JLC)
                                 :
CAESARS ENTERTAINMENT     :
CORP., *et al.*,               :
                                 :
           Defendants.      :
-------------------------------------------------------------X

**JAMES L. COTT, United States Magistrate Judge.**

**To The Honorable Lewis A. Kaplan, United States District Judge:**

     The National Retirement Fund (the "NRF" or the "Fund") and Richard Rust

in his capacity as the Fund's manager (collectively, "Plaintiffs") bring this action

pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA")

against Caesars Entertainment Corporation ("CEC") and Caesars Entertainment

Resort Properties, LLC ("CERP," and collectively with CEC, "Defendants").[1]

Plaintiffs have moved for summary judgment, seeking to collect an outstanding

withdrawal liability payment, as well as interest and liquidated damages, which

they contend are due and owing in light of Defendants' expulsion from the Fund.

For the reasons that follow, I recommend that Plaintiffs' motion be granted.

---

[1] The Fund does not move for summary judgment against Defendants John Does 1-
10 at this time.  Plaintiffs' Statement of Undisputed Material Facts (Dkt. No. 44), at
1, n.1.

## I.    BACKGROUND

### A.    Factual and Procedural History

The Fund is a multiemployer pension plan with a Board of Trustees that is divided between employer-appointed and union-appointed trustees. Complaint ("Compl.") (Dkt. No. 1) ¶¶ 4, 7. Pursuant to collective bargaining agreements ("CBAs"), employers make contributions to the Fund. *Id.* ¶ 15. Employers that contributed to the Fund include: (1) Bally's Park Place, Inc. d/b/a Bally's Hotel and Casino ("Bally's"), (2) Boardwalk Regency Corporation d/b/a Caesars Atlantic City ("Boardwalk"); (3) Parball Corporation ("Parball"); (4) Harrah's Operating Company, Inc. d/b/a Harrah's Atlantic City Casino and Hotel ("Harrah's"); and (5) Chester Downs & Marina, LLC d/b/a Harrah's Philadelphia ("Chester" and collectively with Bally's, Boardwalk, Parball, and Harrah's, the "Employers"). Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts ("Pls. Statement of Facts") (Dkt. No. 44) at ¶¶ 7, 10. CEC (a named Defendant) owns 100% of CERP (the other named Defendant) and 89% of Caesars Entertainment Operating Company ("CEOC"). Of the Employers: (1) Harrah's is 100% owned by CERP; (2) Bally's, Boardwalk, and Parball are wholly owned subsidiaries of CEOC; and (3) Chester is 99.5% owned by CEOC. *Id.* at ¶¶ 5-9.

On January 12, 2015, the Fund decided to stop accepting contributions from the Employers, thereby terminating their participation in the Fund. *Id.* at ¶ 16. Due to their withdrawal from the Fund, the Employers incurred $363,622,615.00 of withdrawal liability pursuant to 29 U.S.C. § 1381. *Id.* at ¶ 20. On February 13,

2015, the Fund sent CEC and CERP a notice and demand letter ("Notice and Demand") notifying them that the Employers had completely withdrawn from the Fund as of January 12, 2015, thereby incurring the withdrawal liability. *Id.* at ¶ 21. The Notice and Demand further stated that this liability was to be paid in 80 equal quarterly installments of $5,981,493.64 with the first payment due on March 15, 2015 ("First Installment Payment"). *Id.* at ¶ 24. According to Plaintiffs, Defendants failed to make the First Installment Payment. *Id.* at ¶ 25.

Plaintiffs filed this action on March 18, 2015 to recover the First Installment Payment, prejudgment interest, liquidated damages, and attorneys' fees and costs pursuant to Sections 502(a)(3) and 4301(a) of ERISA, 29 U.S.C. §§ 1132(a)(3) and 1451(a). Compl. ¶¶ 1, 33-47. Defendants thereafter moved to dismiss the complaint on ripeness grounds and for failure to state a claim, and on November 17, 2015, I issued a Report recommending that Defendants' motion be denied. (Dkt. No. 26) (the "Report"). Judge Kaplan adopted the Report on December 25, 2015. (Dkt. No. 29).

On February 9, 2016, Plaintiffs sought leave to file a motion for summary judgment. (Dkt. No. 33).[2] Over Defendants' objection (Dkt. No. 36), the Court granted Plaintiffs' request and set a briefing schedule. (Dkt. No. 39). Plaintiffs filed their motion on February 26, 2016. (Dkt. No. 42) ("Pls. Mem."). Defendants opposed this motion on March 18, 2016 (Dkt. No. 45) ("Defs. Mem."), and Plaintiffs

---

[2] It is not clear why Plaintiffs did not cross-move for summary judgment at the time of Defendants' motion to dismiss, as it would have made for greater judicial efficiency.

replied in further support of their motion on March 25, 2016. (Dkt. No. 49) ("Pls. Reply").[3]

## B.  Related Bankruptcy Proceeding and Standstill Agreement

Currently pending before the Bankruptcy Court for the Northern District of

Illinois is CEOC's filing for a voluntary reorganization. *See* Defendants' Opposition

to Plaintiffs' Rule 56.1 Statement of Undisputed Material Facts and Defendants'

Statement of Additional Material Facts ("Defs. Statement of Facts") (Dkt. No. 48) at

¶ 14. In that proceeding, on March 25, 2015, the parties jointly submitted an

agreement (the "Standstill Agreement" or the "Agreement") to the court that

extended the date on which the First Installment Payment was due.[4] *See* Affidavit

of John Langstraat ("Langstraat Aff.") (Dkt. No. 47, Ex. A).  Pursuant to Section 3.a

of that Agreement:

> The date for the remittance of the First Installment Payment, if any,
> which the NRF contends is due on March 15, 2015, pursuant to 29
> U.S.C. § 1399(c)(2) and the Assessment Letter (the "First
> Installment Payment"), is extended to thirty (30) calendar days

---

[3] On April 5, 2016, Defendants sought leave to file a sur-reply (Dkt. No. 52, Ex. A) ("Proposed Sur-reply"), which Plaintiffs opposed. (Dkt. No. 53). Sur-replies are generally not permitted because "'such a procedure has the potential for placing a court in the position of refereeing an endless volley of briefs.'" *Soto v. Wright*, No. 11-CV-2289 (PAC) (JLC), 2012 WL 265962, at *2 n.3 (S.D.N.Y. Jan. 26, 2012) (quoting *Kapiti v. Kelly*, No. 07-CV-3782 (RMB) (KNF), 2008 WL 754686, at *1 n.1 (S.D.N.Y. Mar. 12, 2008)), *adopted by* 2012 WL 639166 (S.D.N.Y. Feb. 28, 2012). In any event, as the Court discusses herein, even if the Proposed Sur-reply were considered, it would not change the Court's recommendation to grant Plaintiffs' motion.

[4] In its Report, the Court addressed the effect of the Standstill Agreement on this case and whether it delayed the due date of the First Installment Payment in all contexts or only for purposes of the bankruptcy proceeding. The Court concluded that this issue of contract interpretation and the effect of the Standstill Agreement on this case had to first be presented in arbitration. *See* Report at 9-10.

4

after the date on which the Bankruptcy Court enters an order or orders [denying all of the Bankruptcy Motions] or otherwise denying the relief requested pursuant to such motions (each, an "Order"), unless the obligations to make Installment Payments (as defined herein) are stayed, voided or expunged by a court of competent jurisdiction.

Section 3.d of the Standstill Agreement further provides that:

Prior to the First Installment Payment, the Caesars Controlled Group shall remit monthly payments to the NRF at the rate and on the same terms that the Caesars Controlled Group would have been obligated to remit contributions to the NRF had an alleged withdrawal not occurred (the "Monthly Interim Payments"). The portion of each of the Monthly Interim Payments equal to the amount the Ceasears Controlled Group is obligated to contribute may be allocated and applied to the alleged Adjustable Plan of the NRF for that month and to the Legacy Plan of the NRF in the NRF's discretion.

Because the bankruptcy court has yet to decide the relevant motions, Defendants have made Monthly Interim Payments pursuant to Section 3.d of the Standstill Agreement. Defs. Statement of Facts at ¶ 14. In total, since their expulsion from the Fund in January of 2015, Defendants have paid Plaintiffs $14,437,489.03. *Id.*

## II.   DISCUSSION

### A.   Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, a party may move for summary judgment as to the entire case, or for "'partial summary judgment on a claim or defense, or on part of each claim or defense.'" *Severstal Wheeling, Inc. v. WPN Corp.*, No. 10-CV-954 (LTS), 2014 WL 2959014, at *3 (S.D.N.Y. Apr. 11, 2014) (quoting *Martinez v. Hilton Hotels Corp.*, 930 F. Supp. 2d 508, 518 (S.D.N.Y. 2013)).

5

Summary judgment should be granted if the moving party can demonstrate, based on the depositions, documents, affidavits, admissions, and other materials in the record, "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"The function of the district court in considering [a] motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010) (citation omitted); *see Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (court is confined to "issue-finding," not "issue-resolution"). "'A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 94 (2d Cir. 2012)). In considering the evidence, a court must "'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'" *Hedlund v. N.Y.C. Transit Auth.*, 507 F. App'x 35, 36 (2d Cir. 2013) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).

The moving party bears the initial burden of establishing that there are no genuine disputes of material fact for trial. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party meets its initial burden, the

6

nonmoving party must then cite specific facts in the record to establish that there

are material issues of fact requiring a trial." *Quintero v. Rite Aid of New York, Inc.*,

No. 09-CV-6084 (JLC), 2011 WL 5529818, at *4 (S.D.N.Y. Nov. 10, 2011) (citing

*Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998)). "'If there is any evidence in

the record that could reasonably support a jury's verdict for the nonmoving party,

summary judgment must be denied.'" *Id.* (quoting *Am. Home Assurance Co. v.

Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315-16 (2d Cir. 2006)).

## B.     ERISA's "Pay Now, Dispute Later" Regime

ERISA employs a "pay now, dispute later" regime that requires employers

who dispute withdrawal liability payments nonetheless to make those payments

while the dispute is pending.  Pursuant to 29 U.S.C. § 1401(d):

> Payments shall be made by an employer in accordance with the
> determinations made under this part until the arbitrator issues a final
> decision with respect to the determination submitted for arbitration,
> with any necessary adjustments in subsequent payments for
> overpayments or underpayments arising out of the decision of the
> arbitrator with respect to the determination. If the employer fails to
> make timely payment in accordance with such final decision, the
> employer shall be treated as being delinquent in the making of a
> contribution required under the plan.

*See also Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of

California, Inc.*, 522 U.S. 192, 197 (1997) ("Even if the employer challenges the

trustees' withdrawal liability determination, however, it still must pay according to

the trustees' schedule in the interim under the statute's 'pay now, dispute later'

collection procedure.") (internal quotations and citations omitted); *NYSA-ILA

Pension Trust Fund v. Lykes Bros., Inc.*, No. 96-CV-616 (DLC), 1997 WL 458777, at

*1 (S.D.N.Y. Aug. 11, 1997) ("As part of the MPPAA, Congress created what has been termed a 'pay now, dispute later' formula for dealing with disputes over withdrawal liability. Under this scheme, the employer must begin to pay the withdrawal liability on the schedule set by the plan 'notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule.'") (quoting 29 U.S.C. § 1399(c)(2)).

## C. Requirements for Imposing Withdrawal Liability

Ordinarily, to impose withdrawal liability, the Fund would only need to show that it complied with statutory procedural requirements. *See, e.g., Trustees of Amalgamated Ins. Fund v. Steve Petix Clothier Inc.*, No. 03-CV-4530 (PKC), 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004). Pursuant to these requirements, the "plan sponsor must (1) determine that an employer has partially or completely withdrawn from a multiemployer plan; (2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." *Retirement Plan of Nat. Retirement Fund v. Lackmann Culinary Servs., Inc.*, No. 10-CV-6316 (VB), 2011 WL 3366354, at *3 (S.D.N.Y. July 29, 2011) (quoting *Amalgamated Ins.*, 2004 WL 67480, at *2); *see also* 29 U.S.C. §§ 1382, 1399(b)(1).

Furthermore, pursuant to Section 4001(b)(1) of ERISA, all trades and businesses under common control are treated as a single employer and are jointly and severally liable for withdrawal liability. *See* 29 U.S.C. § 1301(b) ("[A]ll . . . trades or businesses . . . which are under common control shall be treated . . . as a

8

single employer."); *see also Retirement Plan of UNITE HERE Nat. Retirement Fund v. Kombassan Holdings A.S.*, 629 F.3d 282, 285 (2d Cir. 2010) ("Under the principles of the common control doctrine, all businesses under common control are treated as a single employer for purposes of collecting withdrawal liability, and each is liable for the withdrawal liability of another.") (internal quotation omitted). "In order to impose withdrawal liability on an organization other than the one obligated to the pension fund, two conditions must be satisfied: the second organization must be (1) under common control with the obligated entity; and (2) a trade or business." *UFCW Local One Pension Fund v. Enivel Props., LLC*, 791 F.3d 369, 373 (2d Cir. 2015) (citing 29 U.S.C. § 1301(b)(1)).

Nowhere in their opposition papers do Defendants dispute that Plaintiffs have satisfied the statutory procedural requirements. The Fund determined that there had been a complete withdrawal, calculated the amount of withdrawal liability, gave notice to Defendants, and sought payment. *See* Pls. Statement of Facts at ¶¶ 12, 13. Additionally, there is no genuine dispute that Defendants are jointly and severally liable for the Employers' liability given their corporate structure. Defendant CEC owns 100% of Defendant CERP and 89% of CEOC. *See* Defs. Statement of Facts at ¶¶ 5, 6. CEOC and CERP own at least 99.5% of each of the Employers. *Id.* at ¶¶ 7-9. Accordingly, Defendants have a controlling interest in each of the Employers.[5] Further, there is no dispute that Defendants are trades

---

[5] An organization has a controlling interest in an entity when it owns at least 80% of that entity. *See, e.g., Ferrara v. Smithtown Trucking Co., Inc.*, 29 F. Supp. 3d 274, 286 (E.D.N.Y. 2014) ("A 'controlling interest' is defined as ownership of stock possessing at least 80 percent of the total combined voting power of all classes of

9

or businesses, as they are for-profit entities involved in the casino gaming industry.[6] *Id.* at ¶¶ 2-4.

In these circumstances, Defendants are obligated to make withdrawal liability payments. However, that is not the source of the present dispute. Rather, Defendants contend that they have already made these payments. As they put it, ERISA imposes a "pay now, dispute later" regime, but Plaintiffs insist that they "pay twice, dispute later." Defs. Mem. at 11.

### D.    Standstill Agreement

Pursuant to Section 3.d of the Standstill Agreement, Defendants have made Monthly Interim Payments since being expelled from the Fund in January of 2015. In total, Defendants have paid Plaintiffs $14,437,489.03 (the "Payments"). *See* Defendants' Statement of Facts at ¶ 14.

In light of these Payments, Defendants make multiple arguments to support their position that they need not make the First Installment Payment. These arguments fit into two categories: First, Defendants contend that there is a dispute of fact as to whether Plaintiffs are estopped from arguing that the First Installment Payment is due because they have accepted the Monthly Interim Payments. *See* Defs. Mem. at 12-15. Second, they claim that the Monthly Interim Payments create

---

stock entitled to vote of such corporation, or at least 80 percent of the total value of shares of all classes of stock in such corporation.") (citing 26 C.F.R. § 1.414(c)-2(b)(2)(i)(A)).

[6] To be a trade or business, an entity must operate "(1) for the primary purpose of income or profit, and (2) with continuity and regularity." *See UFCW Local One Pension Fund*, 791 F.3d at 372 (internal quotation omitted).

a dispute of fact as to how much of the First Installment Payment is due. *See id.* at 7-12. Defendants further assert that both of these issues (whether the First Installment Payment is due and how much) affect whether interest and liquidated damages are currently due (and in what amount). *See id.* at 15-19.

Plaintiffs counter with two main arguments. First, they contend that whether the Monthly Interim Payments affect the amount of withdrawal liability owed is an issue that must be decided by an arbitrator and, until then, Defendants must pay according to Plaintiffs' schedule. *See* Pls. Reply at 9-10. Second, Plaintiffs maintain that the Court has already rejected Defendants' argument that the First Installment Payment is not yet due, and Defendants cannot circumvent that ruling by recasting their argument under an estoppel theory. *See id.* at 5-6.

## E.   Mandatory Arbitration Pursuant to ERISA

### 1.   The Court's Prior Determination

As the Court discussed in its November 17 Report, ERISA requires that "[a]ny dispute between an employer and the plan sponsor of a multiemployer plan concerning a determination made under sections 1381 through 1399 of this title . . . shall be resolved through arbitration." Report at 6 (quoting 29 U.S.C. § 1401(a)(1)). At that time, Defendants argued that a withdrawal liability payment was not currently due in light of Section 3.a of the Standstill Agreement, which delayed the due date until the bankruptcy court decided certain pending motions that had been filed by the debtors. Plaintiffs, however, relied on Section 4.h of the Standstill Agreement, which provided:

11

> Nothing in this Agreement shall be construed to limit the rights of the
> Parties in, or the power of the courts in, the actions captioned <u>Caesars
> Entertainment Corporation v. Pension Plan of the National Retirement
> Fund, et al.</u>, Civil Action No. 15-CV-00138, in the United States
> District Court for the Southern District of New York, <u>The National
> Retirement Fund, et al. v. Caesars Entertainment Corporation, et al.</u>,
> Civil Action No. 15-CV-02048, in the United States District Court for
> the Southern District of New York, and <u>Wilhelm, et al. v. Noel Beasley,
> et al.</u>, Civil Action No. 2:15-CV-00245, in the United States District
> Court for the District of Nevada.

The Court concluded that there was a dispute as to the schedule of

withdrawal liability payments, and that dispute turned on "whether one reads the

Standstill Agreement as delaying the first installment payment in all contexts (in

both the bankruptcy action and the civil action pending before this Court), or as

limited to the bankruptcy proceeding." Report at 9. Because that dispute concerned

the schedule of withdrawal liability payments, it fell squarely within 29 U.S.C.

§ 1399(b)(1), which is one of the sections that Section 1401(a)(1) enumerates as

subject to mandatory arbitration. Accordingly, the Court concluded that if

Defendants wanted to challenge the withdrawal liability payments and argue that

the Standstill Agreement mandated the delay of these payments, they would have

to do so through arbitration. *Id.* at 10. With that background, the Court now

addresses Defendants' arguments in their opposition papers.

      2.    Estoppel

Defendants contend that there is a dispute of fact as to whether Plaintiffs are

estopped from arguing that the First Installment Payment is currently due.

Pursuant to Section 3.d of the Standstill Agreement:

> Prior to the First Installment Payment, the Caesars Controlled

12

> Group shall remit monthly payments to the NRF at the rate and on
> the same terms that the Caesars Controlled Group would have been
> obligated to remit contributions to the NRF had an alleged
> withdrawal not occurred (the "Monthly Interim Payments").

Defendants maintain that this provision makes clear that Monthly Interim
Payments are only due "*prior* to the First Installment Payment." Defs. Mem. at 12-
14 (emphasis in original). Accordingly, because Plaintiffs have accepted the
Monthly Interim Payments in an amount of more than 14 million dollars,
Defendants argue that Plaintiffs have effectively acknowledged that the First
Installment Payment is not yet due. *See id.* at 13 (quoting *Nirvana Int'l, Inc. v.
ADT Sec. Servs., Inc.*, 525 F. App'x 12, 13 (2d Cir. 2013) ("[W]hen a party receives a
contract, makes no clear objection to its terms, and then accepts the contract's
benefits, the benefitting party is estopped from avoiding the binding effect of the
disavowed provision.")).

Defendants contend that whether Plaintiffs are so estopped is not an issue
that must be arbitrated because it does not involve a determination made under
Sections 1381 through 1399 of ERISA. The Court disagrees. As the Court
concluded in its November 17 Report, the very essence of the dispute is how the
Standstill Agreement affects the payment of withdrawal liability in this case. The
key question is whether the Agreement delays the First Installment Payment in
both the bankruptcy proceeding and this civil action, or only for purposes of the
bankruptcy. Report at 9. Defendants' estoppel argument is premised on the idea
that Plaintiffs cannot simultaneously hold the position in the bankruptcy action
that the First Installment Payment is not currently due (thereby allowing it to

13

collect Monthly Interim Payments) and "the contradictory position [in this action] that the First Installment Payment is past due," thereby allowing it to collect the First Installment Payment. Defs. Mem. at 14.

However, Defendants have never explained the meaning of Section 4.h of the Standstill Agreement (either at the time they moved to dismiss or now). This section expressly provides that "[n]othing in this Agreement shall be construed to limit the rights of the Parties in, or the power of the courts[] in" this action. As the Court has already determined, it is the arbitrator who must decide in the first instance how the Standstill Agreement affects this action. The arbitrator may conclude that Defendants are correct and that the Standstill Agreement requires delay of the First Installment Payment in this action. However, the arbitrator may decide that Plaintiffs should prevail and that Section 4.h of the Standstill Agreement carves out this action such that it has no effect in this case, thus requiring Defendants to do what ERISA otherwise demands—to make the First Installment Payment. If the arbitrator were to interpret the Standstill Agreement as completely excluding this action from its ambit, then, even if Plaintiffs appear to be taking contradictory positions in this action and the bankruptcy proceeding (as Defendants contend), that would not be the type of inequitable result that estoppel is designed to prevent. Instead, it would be the very outcome the parties had contracted for in the Standstill Agreement.

Therefore, the Court rejects Defendants' argument that Plaintiffs are estopped from arguing the First Installment Payment is due. That argument turns

14

on how one interprets the Standstill Agreement, which an arbitrator must decide in the first instance, and, thus, the argument cannot forestall Defendants' obligation to make withdrawal liability payments pursuant to ERISA's "pay now, dispute later" regime.[7]

### 3. Offsetting Monthly Interim Payments Against First Installment Payment

Defendants next contend that even if the Court were to conclude that the First Installment Payment is due, there is a genuine dispute of material fact as to what amount is due in light of the Monthly Interim Payments already made. However, this argument is effectively an indirect challenge to Plaintiffs' calculation of the withdrawal liability owed. Pursuant to 29 U.S.C. § 1399(b)(1), "the plan sponsor shall . . . notify the employer of . . . the amount of the liability, and . . . demand payment in accordance with the schedule." Currently being litigated is whether (and how much of) the First Installment Payment is due. Plaintiffs have assessed a withdrawal liability payment (including liquidated damages and interest) of $7,862,140.79. "The Defendants . . . argue that Plaintiffs' claim should be reduced to zero [due to the $14,437,489.03 in Monthly Interim Payments that they have already made]." Defs. Mem. at 11. This statement makes clear that Defendants are disputing the "amount of the liability" assessed. 29 U.S.C. § 1399(b)(1)(A)(i). Pursuant to Section 1401(a)(1), such a dispute must be arbitrated. *See, e.g., NYSA-ILA Pension Trust Fund v. Am. Stevedoring, Inc.*, No. 12-CV-2506

---

[7] For these reasons, the Court also rejects Defendants' arguments as to interest and liquidated damages, which assume that estoppel would prevent the First Installment Payment from being due.

(PAC), 2013 WL 1234957, at *2 (S.D.N.Y. Mar. 26, 2013) ("'[A]ny dispute concerning
the notice or amount of withdrawal liability shall be resolved through arbitration.'")
(quoting *Bowers v. Trans. Maritima Mexicana, S.A.*, 901 F.2d 258, 262 (2d Cir.
1990)).

The fact that the dispute arises because of Monthly Interim Payments made
pursuant to the Standstill Agreement only reinforces this conclusion. As the Court
previously observed in its November 17 Report, the complicating factor of this
litigation is how the Standstill Agreement affects whether (and how much of) the
First Installment Payment is currently owed in this action. *See* Report at 9-10.
Subsumed within that inquiry is whether payments made pursuant to that
Standstill Agreement can offset any liability in this case. As discussed in the
Report, such issues of contract interpretation that affect whether and how much
withdrawal liability is due directly implicate 29 U.S.C. § 1399(b)(1) and therefore
must be arbitrated. *See* Report at 9-10.

Accordingly, the Court rejects Defendants' arguments that the Monthly
Interim Payments made pursuant to the Standstill Agreement offset the First
Installment Payment due in this case (and any interest or liquidated damages
owing thereon).[8]

---

[8] The Court notes that if it is ultimately determined that Defendants have paid
more withdrawal liability than they owe, ERISA allows adjustments to be made for
"overpayments or underpayments arising out of the decision of the arbitrator." 29
U.S.C. § 1401(d). Assuming Defendants raise this issue in arbitration, if the
arbitrator finds in their favor, they would be entitled to seek adjustment for any
overpayments made. *See, e.g., Bd. of Trustees of Local 50 Pension Fund v. Zucker &
Co., Inc.*, No. 11-CV-1785 (JFB) (ARL), 2012 WL 2325351, at *3 (E.D.N.Y. June 19,

16

4.   Summary

Defendants continue to argue that the Standstill Agreement and payments
made pursuant thereto shield them from making withdrawal payments in this
action. They believe that no payment is currently due, but even if one was, they
have already paid the Fund more than 14 million dollars, which should offset the
First Installment Payment. Defendants may ultimately be right. However, since
they are effectively challenging both Plaintiffs' calculation of the amount due and
the timing of the withdrawal liability payments, ERISA subjects such a dispute to
mandatory arbitration. It is for an arbitrator to decide in the first instance whether
Defendants are correct. In the interim, however, the Court concludes that under
ERISA the First Installment Payment is due in the amount of $5,981,493.64.[9]

---

2012) (ordering payments while arbitration is pending but noting that defendant
could seek adjustment for any overpayment).

[9] In their Proposed Sur-reply, Defendants argue that Plaintiffs' reply has created a
dispute of fact as to what the Monthly Interim Payments constitute (and,
accordingly, whether they should offset the First Installment Payment). In their
reply, Plaintiffs argued that the Monthly Interim Payments: (1) are neither
contribution payments nor withdrawal liability payments; and (2) can be allocated
to future installment payments, rather than applied to the First Installment
Payment. Pls. Reply at 9-10. However, as the Court has already observed, whether
the Monthly Interim Payments can offset the First Installment Payment in this
case is an issue for the arbitrator to decide. Accordingly, how Plaintiffs have
characterized these payments (whether they be contributions, withdrawal liability
payments, or something else) is irrelevant if an arbitrator decides that the Monthly
Interim Payments do not affect the First Installment Payment. Similarly, if an
arbitrator decides that the Monthly Interim Payments have no effect in this action,
then it is irrelevant whether Plaintiffs have discretion to apply the Monthly Interim
Payments to the First Installment Payment or some future installment payment.
Further, the Court notes that, although Plaintiffs first made these arguments in
their reply papers, they did so to respond to Defendants, who had raised the
Monthly Interim Payments for the first time in their opposition papers.

17

## F.   Presently Ascertainable Interest and Liquidated Damages

Pursuant to Section 515 of ERISA:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—(A) the unpaid contributions, (B) interest on the unpaid contributions, (C) an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent . . . of the amount determined by the court under subparagraph A; (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). "These mandatory remedies apply to actions to collect withdrawal liability. A court must award these remedies notwithstanding the pendency of arbitration." *UNITE HERE*, 2006 WL 1292780, at *4 (internal citation omitted); *see also Iron Workers Dist. Council of W. N.Y. & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1506 (2d Cir. 1995) ("Congress thereby made the award of attorney fees mandatory for suits involving delinquent employers . . . and added the current slate of mandatory penalties to be assessed in favor of a plan obtaining a favorable judgment.") (internal citation omitted).

Pursuant to this provision, Plaintiffs seek "liquidated damages (of not less than $1,196,298.73) and interest (of not less than $684,348.42)." Pls. Mem. at 14. Defendants, however, argue that there is a factual dispute as to how much (if any) of the First Installment Payment is currently due, thereby creating a dispute of fact as to how much interest and liquidated damages are due.

18

1.     Interest

The interest owed on the First Installment Payment is calculated at the rate set by the Fund, which is 1% per month (or part thereof), calculated from the date the First Installment Payment was due. *See* National Retirement Fund Collection Policy ("Collection Policy") (Dkt. No. 43, Ex. E) at ¶ 8. Pursuant to the Fund's withdrawal liability schedule, the First Installment Payment was due on March 15, 2015. *See* Defs. Statement of Facts at ¶ 13. As of February 26, 2016 (when the pending motion was filed), Plaintiffs claim the amount of interest owed is $684,348.42. Pls. Mem. at 14.

Defendants do not dispute this amount other than to argue that the Standstill Agreement operates such that the First Installment Payment is not currently due and, accordingly, no interest is due on a non-delinquent payment. Additionally, they contend that any Monthly Interim Payments made pursuant to the Standstill Agreement reduce the principal upon which the Court should calculate the interest. *See* Defs. Mem. at 15-16.

These arguments, however, are circuitous ways of challenging: (1) whether the First Installment Payment is currently due, and (2) how much withdrawal liability is due. As the Court has already concluded, how the Standstill Agreement affects the amount of withdrawal liability is subject to arbitration. The Court rejects Defendants' arguments that the Court's need to calculate interest or liquidated damages empowers it to reach issues that are otherwise subject to arbitration. *Id.* at 15-17. Of course, the Court must know the amount of the First

19

Installment Payment owed in order to have a value to which it can apply the interest rate. However, that does not mean that the Court can resolve disputes as to the amount of the First Installment Payment or the total amount of withdrawal liability. Instead, until the arbitrator renders a decision, the Court accepts Plaintiffs' asserted amount of withdrawal liability and makes any other calculations dependent on that figure. *See Levy Bros.*, 846 F.2d at 881-82 ("Moreover, during the pendency of any arbitration proceedings, payments must still be made in accordance with the sponsor's determination, with any subsequent adjustments to occur after the arbitrator's final decision."). To conclude otherwise would eviscerate ERISA's arbitration scheme because then any time the Court had to make a determination as to interest, Defendants could use that as an opportunity to dispute the amount of withdrawal liability owed and avoid arbitration.

For these reasons, given that the Court has determined the First Installment Payment is due in the amount of $5,981,493.64 and Defendants have not challenged the interest Plaintiffs seek (other than in the ways identified above), the Court should award interest in the amount of $684,348.42.

2. Liquidated Damages

Pursuant to Section 515 of ERISA, Plaintiffs are entitled to liquidated damages in "an amount equal to the greater of—(i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent [of the unpaid contributions]." 29 U.S.C. § 1132(g)(2)(C)(i). The Collection Policy entitles Plaintiffs to liquidated damages in

20

the amount equal to 20% of the unpaid contributions. Collection Policy at ¶ 8. The unpaid contribution in this case is $5,981,493.64, which results in a liquidated damage value of $1,196,298.73. Similar to their arguments related to interest, Defendants contend that there is a genuine factual dispute as to how much in liquidated damages is owed. They contend that "the calculation of liquidated damages is . . . 20% . . . times the delinquent amount due." Defs. Mem. at 17 (internal quotation omitted). Defendants maintain that there is a factual dispute as to how much the "delinquent amount" is in light of the Standstill Agreement and the Monthly Interim Payments. However, as discussed, the Court's calculation of interest and liquidated damages does not provide Defendants with an opportunity to sidestep arbitration. Accordingly, Plaintiffs should be awarded $1,196,298.73 in liquidated damages.

### G.   Other Damages

Plaintiffs request that the Court defer ruling on any additional interest, liquidated damages, or attorneys' fees and costs that may be due because they are either disputed or unable to be determined at the present time. Pls. Mem. at 12-13. For example, interest continues to accrue until the First Installment Payment is made, but the $684,348.42 in interest that the Court recommends Plaintiffs be awarded only represents interest that accrued as of the date of the filing of Plaintiffs' motion (February 26, 2016). Accordingly, the total amount of interest cannot be determined until Defendants make the First Installment Payment. The Court should thus defer ruling as to whether Plaintiffs are entitled to any

additional damages until Plaintiffs seek such damages, and presumably Plaintiffs will make a further application seeking attorneys' fees and costs, as well as any additional interest and liquidated damages, if this Report is adopted and partial judgment entered.

## III.   CONCLUSION

The Court concludes that the Standstill Agreement (and Monthly Interim Payments made pursuant thereto) does not operate to forestall or reduce the amount of the First Installment Payment that Plaintiffs claim is due.  The effect of the Standstill Agreement on the amount of withdrawal liability due and the payment schedule is an issue that must be arbitrated.  Accordingly, the Court should grant Plaintiffs' motion and direct the Clerk to enter a partial judgment requiring that Defendants pay $7,862,140.79, which is comprised of the First Installment Payment ($5,981,493.64), interest that accrued on the First Installment Payment as of the date of Plaintiffs' motion ($684,348.42), and liquidated damages ($1,196,298.73).

### PROCEDURE FOR FILING OBJECTIONS
### TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See* Fed. R. Civ. P. 6.  Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan and the undersigned, United States

22

Courthouse, 500 Pearl Street, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan.

**FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW**. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596  F.3d 84, 92 (2d Cir. 2010).

Dated:  New York, New York
       May 5, 2016

                                   JAMES L. COTT
                                   United States Magistrate Judge